## WINSTON v JAMES et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1450. Decided Sept 14, 1937

John H. Shively, Dayton, for plaintiff-appellant

Mason Douglass, Dayton, and Francis C. Canny, Dayton, for defendants-appellees.

### OPINION

By THE COURT

The above entitled cause is now being determined on plaintiff's appeal on questions of law from the judgment of the Common Pleas Court of Montgomery County, Ohio.

The following statement of facts will render understandable the nature of the controversy and the claimed errors arising in the trial.

On the 27th day of September, 1897, William Bradford, of Montgomery County, Ohio, duly executed his last will and testament.

On the 30th day of June, 1907. the said William Bradford died and shortly thereafter his will was duly probated by the Probate Court of Montgomery County, Ohio. The said William Bradford at the time of his decease left no surviving spouse.

Letters testamentary were duly issued to the individuals named in the will, all the debts and claims against the estate were paid and the administration of the estate fully settled on the 1st day of March, 1909.

The said William Bradford at his decease left surviving the following children and none other: Ella Bradford, Robert Finley Bradford, Effie Bradford Grimes and Irley Bradford. Irley Bradford is the same as Earl Bradford, and generally known by the name of Earl).

The sole question arising in the case involves a construction of Item 8 of the will of William Bradford, which reads as follows:

"Item 8. That portion of the homestead farm lying and being in Van Buren Township in said county containing 100 acres of land (more or less) with the home buildings thereon, I give and devise to my said four children, viz.: Ella Bradford, Robert Finley Bradford, Effie Grimes and Irley Bradford, share and share alike for and during their natural lives, and at the death of any without issue, to the survivors of the last survivor of the four, and at the death of the last of the four, said land to pass to the descendants of said four children."

Irley Bradford, otherwise known as Earl Bradford, was the last survivor of the four, he having died testate on the 18th day of October, 1934. Neither Robert Finley Bradford nor Irley Bradford, otherwise known as Earl Bradford, left any descendants surviving their decease. Ella Bradford left surviving as her only descendant, the defendant, Estella James. Effie Grimes left surviving as her only descendant, the plaintiff, Elizabeth G. Winston. The plaintiff, Elizabeth G. Winston, and the defendant, Estella James, were the sole and only descendants of the four children of William Bradford, deceased, within the terms of Clause 8 of said will. Both the plaintiff, Elizabeth G. Winston, and the defendant, Estella James, were living at the time of the execution of the will of William Bradford, deceased.

On the 21st day of October, 1907 (following the probate of the will of William Bradford) the plaintiff, Elizabeth G. Winston, who was then Elizabeth Grimes Potts, and her then husband, Frank F. Potts, for the recited consideration of $1.00 and other good and valuable consideration executed and delivered a quitclaim deed to her mother, Effie Grimes, for the premises referred to in Item 8 of the will of William Bradford, said deed being recorded in Volume 314, page 5, of the Deed Records of Montgomery County, Ohio.

On the 2nd day of July, 1909, the said

Effie Grimes, then unmarried, for a consideration of $2000.00 executed and delivered a quitclaim deed of her interest in said premises to the said Earl Bradford (sometimes known as Irley Bradford), said deed being recorded in Volume 314, page 5, of the Deed Records of Montgomery County, Ohio.

On the 5th day of August, 1908, the defendant, Estella James, together with her mother, the said Ella Bradford, for a consideration of $1000.00 executed and delivered a quitclaim deed of all their interest in said premises to the said Earl Bradford, said deed being recorded in Volume 303, page 337, of the Deed Records of Montgomery County, Ohio.

On the 26th day of June, 1909, the said Robert Finley Bradford and wife, for a consideration of $1000.00 executed and delivered a quitclaim deed of all their interest in said premises to the said Earl Bradford, said deed being recorded in Volume 314, page 321, of the Deed Records of Montgomery County, Ohio.

The plaintiff, Elizabeth G. Winston, in her petition seeks partition of the premises referred to in Item 8 of the will of William Bradford, deceased, claiming that she has a legal right to and is seized in fee simple, as a devisee of the remainder under the will of William Bradford, deceased, of the undivided one-half of said premises, and that the defendant, Estella James, is seized in fee simple, as a life devisee, to the remaining one-half.

The petition also names as defendants all other persons who claim or might have an interest in the premises as devisees under the last will and testament of Earl Bradford, deceased.

The prayer of the petition asks that Clause 8 of the will of William Bradford be given a construction and determination that she is possessed of the undivided one-half interest in said premises and that partition may be made and her one-half interest set off to her in severalty.

The defendants, including Estella James, through admissions and denials, meet the claim of ownership of the plaintiff and assert and claim that at the time of the decease of Earl Bradford, also known as Irley Bradford, he was the sole owner in fee simple of said premises and that the same passed under the provisions of his last will and testament, which was admitted to probate on the 25th day of October, 1934, in the Probate Court of Montgomery County, Ohio.

Defendants pray that the petition of

plaintiff as to the first cause of action be dismissed and that the prayer of plaintiff in her petition based thereon be denied and that the defendants go hence with their costs.

The cause was submitted to the court below on an agreed statement of facts and we have before us in this court this same agreed statement, signed by counsel representing the respective parties. The trial court· found for the defendants and against the plaintiff.

Counsel for plaintiff present the following assignments of error:

"1. That the judgment of the Common Pleas Court of Montgomery County, Ohio, is contrary to law.

"2. For all other errors, omissions and defects apparent upon an investigation of the record and proceedings in said cause."

The second assignment of error was evidently incorporated through an abundance of caution, but apparently nothing is claimed for it in the brief.

It is the claim and contention of counsel for the plaintiff that under Item 3 of the will of the ancestor, William Bradford, she was given a contingent remainder which did not vest until the death of Earl Bradford, the last survivor of the four children; that prior to the vesting there was no right or power of alienation and that the quitclaim deed attempted to be executed by her to her mother in 1907 was a nullity.

Counsel for the defendants make the claim that under the will of the ancestor, William Bradford, in Item 8 thereof, the plaintiff was given a vested remainder subject to be diminished or increased through the death or birth of other descendants who would qualify under the provisions of Item 8 of the will. That the descendants not having changed through death or birth, there was no divesting of any interest and that plaintiff's quitclaim deed to her mother precludes her from asserting any title at this time.

Counsel for defendants also make the claim that whether the interest of the plaintiff was vested or contingent, that following legal precedents, the quitclaim deed is binding upon the plaintiff and divests her of any claim to the premises.

Very able and comprehensive briefs have been filed by counsel representing the respective parties. We also have the benefit of the findings of the trial court as incor-

porated in his finding entry under date of December 29, 1936.

The briefs of counsel cite and comment on innumerable decisions, not only from the courts of this state, but also other jurisdictions within the United States; also, excerpts from text writers and other publications, including Volume 16 O. J., under the subject of "Estates."

We have carefully examined all of the citations, and in none do we find an exact parallel situation to the instant case.

It shall not be our purpose to discuss at length the many cited cases to point out the distinguishing features, but content ourselves with stating our conclusions, together with a reference to a few of the Ohio cases.

First and foremost, we start with a recognition of the principle that in the construction of a will the intent of the testator is controlling. While there is a presumption that words and phrases are used with their ordinary meaning and usual legal significance, yet this presumption is not controlling if a contrary meaning is clearly discernible from the context of the will as a whole.

In determining the testamentary intent it sometimes is necessary to give a meaning to words contrary to the ordinary legal definition. For instance, the language "heirs" has been construed to mean "children," and "children" to mean "heirs." This is likewise true of every other expression through which, ordinarily, the character of the estate is determined.

We also are required to keep in mind that the law favors the vesting of estates. An estate will never be considered contingent when it can be construed as vested. **Linton v Laycock, 33 Oh St 128.**

Of course, courts may not disregard the plain language of a last will and testament and give it a construction passing a vested estate, merely because of the law's preference. Such a course would do violence to the legitimate methods of ascertaining testamentary intent.

With these principles in mind, we now approach the problem in the instant case. The sole question revolves around a meaning to be given to the word "Descendants." Counsel for plaintiff-appellant urge that the term is synonymous with "heirs of the body," and therefore passed a contingent estate, not alienable or transferrable until

after the determination of the life estate. Counsel for defendant-appellee take the position that the words "Descendants" are synonymous with the terms, "children" or "grandchildren," and that two of the class being in existence at the date of the death of the testator, these two individuals take a vested remainder, subject to being increased or diminished at the time of the death of the life tenant.

The trial court held to the latter, and we are constrained to the ██ view that it was correct in its conclusion.

Considering the will as a whole, and particularly Item 7, in connection with Item 8, certain fixed mental attitudes are discernible. In the instant case the testator had in mind more than the mere acres comprising his realty possessions. He was thinking of it as the family home, and it is apparent that he desired to perpetuate it as such. He had four children, and he wanted to treat each alike. No favors to one over the other. He conceived the idea of perpetuating this homestead by giving to the four children a life estate, with survivorship down to the last living child. Under the uncertainty of life he could not know how long this life estate would continue, or which one of his four children would be the survivor. It was his desire to continue this homestead property in the family name after the death of the last survivor of his four children. At the time of executing his will he had surviving two grandchildren, and we assume that he knew this fact. These two grandchildren were living at the time of his death, and both survived the four children of the decedent. They are living today, one is the plaintiff, who is making the demand for the undivided half of the estate, and the other is a defenedant, who through her answers renounces all claim to the interest and stands by the deed which she had previously executed.

Surely the testator had in mind these two grandchildren at the time he executed this will. He likewise must have realized the uncertainty of life and also the uncertainty as to whether other descendants might be born to his children; he desired all treated alike; he used the words "Descendants" as an all inclusive term, that is, that it would include grandchildren, great grandchildren, and possibly great-great-grandchildren, even down to the remotest degree; it would be in a directly descending line, as opposed to an ascending line. It is our judgment that the testator had in mind in using the words "Descendants" to include his two grandchildren and any others that might be born, so as to include all in the descending line.

Suppose the testator, instead of using the word "Descendants," would have said, after the death of the last survivor of his own children the estate shall pass to his grandchildren and if any should not then be living then the share of such grandchild should pass to their child or children, if there be any then living. Could there be any contention as to the character of the estate passing under such a devise? This was exactly the language used in the will construction in the case of **Millison v Drake, 123 Oh St 249** (Franklin County). In this reported case it was urged that the children held no estate to be conveyed. The Supreme Court held otherwise. The conclusion of the Supreme Court was that the children have a vested remainder, subject to the divested, and that a good title passed through the deed executed by the children. The court commented upon the possibility that the grantee had a cloud on his title through the possibility of some portion or all of the interest being divested. It is our conclusion that the same principle could be given application in the instant case, that is, that the words "Descendants" could be construed as grandchildren, and then following the principle of Millison v Drake, supra, determine that the interests of the grandchildren was a vested remainder, subject to being divested; that the conveyance that the plaintiff made to her mother through her quitclaim deed is valid, and that she has no interest in the premises at this time.

We might say further that our conclusion would be the same, even though it should be determined that plaintiff's interest was contingent rather than vested. The case of **Needles, Exr. v Needles et, 7 Oh St 432,** is applicable; we quote from the syllabus:

"Although, as a general thing, all contingent and executory interests and contingent estates, of inheritance, as well as springing and executory uses, and possibilities coupled with an interest, are assignable and releaseable, yet it is a settled rule that what is termed either a naked possibility or a remote possibility cannot be released for the reason that a reiease must be founded on a right in being, either **vested or contingent.**" (Emphasis ours).

The case of Needles v Needles, supra, was referred to and the opinion approved in the case of **McGhee v Sigmond, 109 Oh St 375.**

In the instant case counsel for the plaintiff-appellant refer to the rule upholding the release of a contingent remainder to a life tenant in possession, but contend that the rule could not be applicable in the instant case, for the reason that plaintiff's mother at the time of the execution of the quitclaim deed was not in possession. We think counsel are in error in this conclusion. Plaintiff's mother was in possession, although not an occupant. The original agreed statement of facts contained a stipulation that the mother was not in possession, but this was afterwards amended. The rule of law is that any tenant in possession will in law not only be in possession for himself, but all other joint tenants. The only exception to the rule is where the occupant is holding adversely. There are innumerable instances where land owners never occupy the farm that they own, but rent it for cash or grain rent. The occupancy of such tenant is construed as a possession of the landlord, owner.

We affirm the judgment of the lower court.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.